NxchousoN, C. J.,
delivered the opinion of the Court.
In 1853, Thomas Hines sold to Steele & Edmiston, several tracts of land in Lincoln County, for the price of $19,000, the purchasers paying in cash, $5,000, and executing their notes, on nine years’ time, for the residue of the purchase money. Hines executed to them a deed for the land; but, on the face of it retained a lien for the payment of the notes so executed, for the residue of the purchase money. The deed was regularly probated and registered on the 31st of March, 1853.
The bill is filed to enforce the lien so retained. Complainant alleges, that soon after said sale and conveyance to Steele & Edmiston, they sold the lands to Henry A. Kelso, and then he sold to R. A. McDonald. After which sales and conveyances, complainant alleges, Steele & Edmiston applied to complainant and requested him to take the notes of Kelso & McDonald, who were then partners, to be made payable to complainant in lieu of the notes of said Steele & Edmiston; which he consented to do, but still to retain his lien upon the land, as specified in his deed. Whereupon, he alleges, said Kelso & McDonald executed to him their joint and several notes for the same amounts, and payable on the same time. That he then surrendered the notes of Steele & Edmiston, and received in lieu thereof, the notes of Kelso & McDonald, but by no act, word or deed, meaning to release his lien, but retaining and relying on the same as contained in his deed.
*398 He also alleges, that Kelso & McDonald have paid the first six notes, leaving the last three, for the satisfaction of which his bill is filed.
He further alleges, that McDonald, by deed dated in 1865, conveyed the said lands in trust, to defendant, Perkins, to secure the payment of certain debts named, but making no provision for the payment of said purchase money due to complainant.
Defendants, McDonald and Perkins, answer jointly. They admit the sale of the land by complainant to Steele & Edmiston, but don’t know whether the deed was regularly registered, nor whether an express lien was retained upon its face. They are willing to admit that Steele & Edmiston sold the lands to Kelso, and that Kelso sold to McDonald. Defendant McDonald does not know whether Steele & Edmiston requested complainant to take the notes of Kelso & McDonald, in lieu of their own. He admits that he and Kelso were partners in other transactions, but denies that he was a partner of Kelso in the purchase of the lands. He admits that he and Kelso executed their joint and several notes to complainant, to be used about the payment of the land, and supposes they wére in lieu of the notes of Steele & Edmiston. He signed said notes only as the security of Kelso. Defendant Perkins, says he knows nothing in respect to the exchange of notes. Defendants do not remember, or know, or admit, that at the time of the exchange of notes, there was a contract or understanding that the lien should be reserved and applied to the substituted notes. They admit the execution of the trust deed, and insist that the beneficiaries have a better title to the land than complainant.
*399 The defendants answered under oatb.
As preliminary to an examination of the question of law arising in the cause, we deem it useful to state succinctly the prominent facts to be deduced from the bill and answer.
It is clear, that when Kelso & McDonald executed their notes to Hines, to be substituted in lieu of the notes of Steele & Edmiston, they did so with a knowledge that the notes of Steele & Edmiston had been given as the purchase price of the lands, which Kelso had then purchased from Steele & Edmiston, and had sold to McDonald. They knew that their notes, payable to complainant, were received by him in lieu of the notes given for the. purchase money. They ’knew that all of the purchase money for the land was unpaid, except the cash payment of §5,000. They executed their notes, with notice, that the deed from complainant to Steele & Edmiston contained a reservation of a lien on the lands for the satisfaction of the notes, for which the notes of Kelso & McDonald were substituted. They do not show when Kelso purchased from Steele & Edmiston, what he paid, or how, or what kind of conveyance he took from them. Nor do they show when McDonald purchased from Kelso, what he paid, or how, or what kind of conveyance he took from him. In x’esponse to the allegation that Kelso & McDonald were partners, and that they executed to complainant their joint and several notes, they admit they were partners in some transactions, but not in the purchase of the land; and they admit they executed their joint and several notes, but they say that McDonald only executed the notes as security for Kelso.
*400 The contest in this cause is between the vendor’s specific lien, created by contract, and regularly registered, and the creditors, whose claims are secured by conveyance of the lands to a trustee. In such a contest the prior specific lien will prevail over the subsequent lien created by the deed of trust, whether the creditors have accepted the benefits of the deed or not. Brown v. Vanlier, 7 Hum., 241.
It is therefore clear, that when Kelso bought the lands of Steele & Edmiston, and when McDonald bought of Kelso, they took them subject to the express lien of complainant. This was the case, no matter what was the character of the conveyances from Steele & Edmiston to Kelso, and from Kelso to McDonald. If, therefore, complainant had continued to hold the notes of Steele <fc Ed-miston, no question could be raised as to the superiority of his lien over the claim of McDonald or his creditors under the trust deed.
But the controversy arises upon the substitution, by the agreement of all the parties except Perkins, the trustee, of the notes of Kelso & McDonald for those of Steele & Edmiston. This substitution took place after Kelso had bought the land of Steele & Edmiston, and after McDonald had bought of Kelso, both of which transactions were in a short time after the sale by complainant to Steele & Edmiston. It does not appear what was the specific contract between Steele & Edmiston with Kelso, or of Kelso with McDonald, but it may be reasonably inferred that Kelso refunded to Steele & Edmiston the cash payment of $5,000 he had made to complainant, and executed his notes to them for the amount owing by them to complainant. And in like manner that McDonald refunded *401 to Kelso tbe $5,000 paid to Steele & Edmiston, and executed his notes to Kelso for the balance of the purchase money. "When the exchange and substitution of notes took place, complainant, instead of taking the notes of McDonald, payable to Kelso, took the joint and several notes of Kelso & McDonald, payable to himself.
It is not debatable, that when the vendor has only the implied lien or equity, it will be considered as waived whenever he takes any distinct or independent security, whether by mortgage of other lands, or pledge of goods, or personal responsibility of a third person; unless there is satisfactory evidence that he intended to retain the implied lien: Campbell v. Baldwin, 2 Hum., 248; Marshall v. Christmas, 3 Hum., 616.
Much of the apparent confusion in the authorities as to the application of the principles connected with the vendor’s lien, has grown out of the failure to observe the distinction which exists between the implied lien for purchase money, where the vendor has conveyed the title, legal and equitable, to the vendee; and the express lien, either reserved by retaining the legal title or by contract on the face of the deed.
In the case of Anthony v. 8mith, 9 Hum., 508, this distinction is pointed out by Judge McKinney: He says, “in the former case the vendor has parted with both the legal and equitable estate. In the case where the legal title is retained, the law will presume it to have been retained as an absolute security for the purchase money. In this case, the vendor, retaining the legal title, is placed upon the footing of a mortgagee, who has taken a security for the purchase money.” In such case, Judge McKinney *402 holds, “that the operation of the waiver of the lien, by the substitution of a third person’s note, can not arise. The security of the vendor, in such case, can not be defeated by any thing short of what would be regarded as sufficient to -extinguish or defeat the security of the mortgagee:” 9 Hum., 508.
In this opinion, Judge McKinney confined his attention to the distinction between the implied vendor’s lien, and the lien resulting from a retention of the legal title in himself. The facts of the case before him not calling for any reference to the express lien, by contract retained on the face of the vendor’s deed, none was made. But there is the same marked distinction between the vendor’s implied lien for the purchase money, in cases where the legal and equitable title have both been conveyed to the vendee, and the express lien by contract retained by the vendor in the face of his deed to the vendee. In the. latter class of cases, the vendee receives the legal title, subject to a specific and express charge for the purchase money, retained in ',the deed for the vendor. ' In these cases the vendee becomes a trustee for the vendor, and holds the legal title in trust for the vendor. His relation to the vendor is substantially that of mortgagor to mortgagee. In these cases, as in those where the vendor' retains the legal title, the security of the vendor can not be defeated 'by anything short of what would be regarded as sufficient to defeat or extinguish the security of a mortgagee.
Our conclusion, therefore, in the present case, is, that the only question for determination is, whether the.substitution of the notes of McDonald & Kelso, for the notes of Steele & Edmiston, originally given for the balance of *403 the purchase money, can be regarded, in law, as a payment of the debt to complainant. That it can not, is clear. Complainant charges that he received the notes of Kelso & McDonald, in lieu of those of Steele & Edmiston, with the distinct understanding and agreement, that his lien for their payment was to continue. McDonald, at the time the notes were given, had bought the lands from Kelso. In his answer to the allegation that it was agreed the lien was to continue, he evades the charge, and says he does not remember how that was, and therefore does not admit, nor does he deny it. He knew when he gave the notes that he could not get an absolute title to the lands, until complainant’s express lien was satisfied. He knew that the notes of Steele & Edmiston constituted the balance of purchase money which had to be paid before his title could be perfected, and he substituted the notes of Kelso and himself for those, of Steele & Edmis-ton, for the purpose of assuming the payment of the balance of the purchase money. All the facts and circumstances repel the idea that McDonald was the mere security of Kelso. Why should he become the surety of Kelso, when he had bought the land from him, and was bound to pay the purchase money before his title could be perfected? We are satisfied that complainant received the notes of Kelso & McDonald, not as payment of the debt due him by Steele & Edmiston, but by way of substitution, and without any purpose of waiving or relinquishing his lien.
Nor does Perkins, the trustee, stand in any other or better position than McDonald. His grantor, McDonald, held the lands in trust for the payment of the balance of the *404 purchase money due to complainant. As the charge on the land was fixed by a registered contract, McDonald could convey to Perkins no more title than he had himself. Perkins, therefore, holds the legal title of the lands, subject to the prior and superior lien of complainant for the satisfaction of the balance of the purchase money.
Let the decree of the Chancellor be affirmed, with costs.